[L. A. No. 8305. In Bank.—March 30, 1931.]

JOHN G. NELSON, Respondent, v. LAKE HEMET WATER COMPANY, Appellant.

EDGAR E. McDOWELL et al., Respondents, v. LAKE HEMET WATER COMPANY, Appellant.

Hunsaker, Britt & Cosgrove for Appellant.

W. G. Irving and Fred L. Hamblin for Respondents.

PRESTON, J.—We have been led to a conclusion on a simple question of law which disposes of the appeals in both of the above causes, which were tried together, and renders superfluous a discussion of the various other questions so ably urged by appellant. This conclusion is that the respective rights of the parties to this litigation have been previously determined and settled by a judgment of this court; hence the doctrine of *res judicata* has thereby intervened. We refer to the case of *Allen* v. *Railroad Com.,* 179 Cal. 68 [8 A. L. R. 249, 175 Pac. 466], hereinafter called the Allen case for convenience. Reference is made to said case for a complete history of defendant corporation, its manner of doing business, together with a description of the rights and claims of Allen and others, all of whom, including respondents, were in an identical situation; therefore, only a brief recital of the facts is required.

Appellant and an allied corporation acquired ownership of a large area of agricultural lands along the San Jacinto River in Riverside County, together with a water supply from said river and its tributaries. Between the years 1889 and 1915 it subdivided said lands and sold them in small areas, selling likewise with each tract a perpetual water right appurtenant thereto, evidenced by a contract in the form of so-called water certificates, which provided for one-eighth of a miner's inch of water per acre for each of said tracts during the irrigation season at an annual rate of two dollars per acre. Several hundred of these tracts were sold and a corresponding number of water certificates were issued. In the course of time the weight of these contracts at so low a figure bore heavily upon the corporation. Accordingly, in 1915 it came before the Railroad Commission and petitioned, alleging itself a public utility with respect to the service to the owners of these water certificates, and praying to be allowed to abrogate said contracts and that each holder be required to pay an increased charge for his water supply. The commission entertained the petition; presumably all the legal steps, such as notice and publication, were duly taken and the parties were brought before the commission regularly for the hearing. The hearing was held, evidence taken and the proceeding resulted in an order of the commission, made in 1916, granting the prayer of the petitioner and declaring it a public utility and attempting to increase the water rate of each holder from two dollars to three dollars, directing a compliance therewith. Respondents themselves or their predecessors in interest were thus legally before the commission as parties in the matter of this hearing.

Following this order of the commission a rehearing was denied and thereafter petition was made to this court by some of the certificate holders only for a review and annulment of the order. Other of the certificate holders in like situation, for reasons we can only surmise, did not become actual parties by name to the proceedings in this court. Respondents and their predecessors were of this latter class. Said proceedings terminated in the order and judgment in the Allen case, above cited.

This court held that the water supply of the corporation had not been dedicated to a public use at the time of the issuance of said water certificates; that the water right

vested in the land owner and was made appurtenant to his private property; that these water rights constituted easements attached to the respective lands and impressed a corresponding servitude upon the source of supply and distributing system of the corporation; that in the making of said contracts both parties to each thereof acted as of right in their private capacities.

Notwithstanding this holding, appellant immediately took the position that the Railroad Commission order was in full force and effect as to all parties who had not actually participated in the proceeding for review by this court; in other words, only such parties as actually petitioned this court received the benefit of the annulment of said order of the commission by the judgment in the Allen case. Acting upon this contention appellant required respondents in this action to pay the increased charge fixed by the commission, which said charge respondents reluctantly paid for a time.

Later, and in the year 1920, another hearing was had before the Railroad Commission, in which still another increased rate was allowed as to certain utility services being rendered by the corporation. Appellant again assumed that this rate was applicable to the respondents and required that they conform to it; this, too, in the face of the fact that by the order of 1920 the commission expressly declared that it was without jurisdiction to fix the rate to be paid by the certificate holders. In other words, the commission expressly declared the Allen case to be a test case and to have settled the rights of all the certificate holders and the status of appellant toward them, whether or not they were participants in the special proceedings for review by this court.

The result of this situation was that the two actions now before us were instituted in the year 1920 to compel appellant to respect the water certificates originally issued and to supply respondents with the water called for therein at the rate therein specified. Issue was joined on the complaints; several special defenses were interposed; trials were had, followed by findings of fact, conclusions of law and judgment in full accord with the allegations and prayers of the complaints, from which defendant prosecuted these appeals, each of which is primarily predicated upon the contention that the Allen case left the order of 1916 in effect

as to all the respondents and as a consequence the superior court was without power to overthrow or modify it in this action. It is this contention which we shall now discuss.

After a consideration of the proceedings before the commission and opinion and judgment of this court sitting in review thereof, we are forced to conclude that the fixing of the status of appellant under the utility law was the primary task undertaken by both tribunals. The judgment in question rested solely upon the conclusion that appellant was not a public utility, by reason of which fact the Railroad Commission was without authority or jurisdiction over it. No other important question was before the court.

This fact seems to classify this holding at once as a species of *in rem* judgment, binding upon appellant and all others who were before the commission and who were in the like situation of petitioners in said Allen case. Decrees of divorce, or annulment, which settle the marital status of persons, decrees establishing residence, sanity, insanity or heirship, seem analogous, as do also decrees in probate, bankruptcy or admiralty. It would be illogical indeed to hold that appellant was not a public utility in its relationship with a vast number of the certificate holders but that in its relationship with some others it was a public utility, administering a public service; in other words, to charge certain holders of certificates of appellant of like issue, purpose and tenor upon a private contract one rate and others upon a contract affected by a public interest at another rate, is thoroughly incongruous. The decree of the Railroad Commission of 1916 must, therefore, be held to have been overthrown entirely by the judgment in the Allen case, and in so doing appellant was established as and declared to be a private corporation as to the services being rendered the said certificate holders.

The situation must be held to be the same as if the Railroad Commission had decided the issue presented to it differently by holding that the certificate holders contracted with appellant in its private capacity only. No one would say that such a holding would not have bound appellant in its relationship with all said certificate holders. The fact that this adjudication was made by review and annulment of the decree, instead of by affirmance thereof, does not prevent it from being final so long as it is clear that an adjudication of the disputed question was intended.

In this view of the cause the Allen decree could have been sought by one petitioner alone, and when secured it would have been binding upon appellant as to all the class of certificate holders to which he belonged. ▮ It is therefore not germane to review the events transpiring prior to this adjudication, as all questions which could have been raised prior to the judgment are conclusively deemed to have been presented and all proof that could have been presented is conclusively presumed to have been received. (*Price* v. *Sixth District*, 201 Cal. 502 [258 Pac. 387].)

Likewise it is of no avail to make even a successful assault upon the doctrine of the Allen case, for it could in no event avail appellant as against respondents, for all rights between appellant and respondents were there finally adjudicated as of that date.

▮ The contention that by paying the rate prescribed by the Railroad Commission for one or two seasons respondents acquiesced in the claim of appellant that it was a utility need receive but little consideration. The court found these payments to have been made under compulsion. Respondents, being orchardists, had to have water and there was no other supply; appellant refused to respect the contract and respondents' payments must therefore be considered as compulsory. It is certainly not a situation upon which to predicate the abandonment of a private right of property.

▮ The claim that respondent McDowell's certificates postdated the judgment in the Allen case is met by the undisputed finding that the certificates held by him were reissues of certificates which antedated the Railroad Commission hearing and whose holders were, constructively at least, before the commission at said hearing.

We are confirmed in the views we have expressed by the holding of the commission itself that the Allen case was a test case and settled the status of appellant as to all certificate holders before the commission, and in accord with this declaration it refused to fix any rates in 1920 between appellant and respondents.

It follows that the judgment in each case is hereby affirmed.

Shenk, J., Langdon, J., Seawell, J., Waste, C. J., and Richards, J., concurred.

Rehearing denied.