[Civ. No. 19052. Second Dist., Div. One. Nov. 12, 1952.]

WARREN KING et al., Appellants, v. THE INTERNATIONAL UNION OF OPERATING ENGINEERS et al., Respondents.

Aaron Sapiro for Appellants.

Parker, Stanbury, Reese & McGee and Williams H. Thomas for Respondents.

DORAN, J.—The complaint herein, for declaratory relief, was filed by plaintiffs as members of the defendant International Union of Operating Engineers and Local Union No. 12, both unincorporated associations. The dispute and controversy concern certain new by-laws which plaintiffs claim are invalid "because of express violations of the basic Constitution in their contents, and by reason of the invalid method of adoption." Plaintiffs contend that "Local No. 12 is entitled to immediate self-rule, under the basic Constitution; and that an officer of the Court should be appointed to take over the operations of the Local Union from the International Representatives and to take all steps necessary to place the membership in democratic control of their Local Union No. 12."

Among other defenses, the answer pleads res judicata, in that the issues of the present case "have been tried and adjudicated against their (plaintiffs') contentions and prayer in the case of *Klippel* v. *International Union of Operating Engineers, et al.* (Superior Court, Los Angeles County, No. 568419) . . . commenced by members of the defendant International and Local No. 12 who purported to act and were found by the Court to have acted on behalf of members (thereof) as these plaintiffs claim to be doing; that there also appeared in that action certain intervenors who also

alleged that they were acting for and on behalf of the members. . . .''

In the Klippel action just mentioned, Superior Court Judge Paul Nourse, on February 14, 1951, decided against the plaintiffs' contentions and found that although the International and its officers had failed to perform their duties in respect to carrying out "the steps necessary to terminate International supervision and to restore to Local No. 12 and its members" the rights granted under charter and constitution, "said wrongs are wrongs within the Union"; that remedy exists for said wrongs, to wit, a petition to the president of the International to terminate International supervision and if that be denied, an appeal to the executive board of the International; that plaintiffs had not pursued said remedies; that the interveners had attempted to pursue said remedies by filing a petition but that the International president had denied such petition and that an appeal to the executive board was then pending; and that "the evidence fails to establish by a preponderance that said appeal is futile or useless."

The judgment in the Klippel case ordered "that this action should be and is hereby dismissed without prejudice to the commencement of a new action, should defendant International fail within a reasonable time after the 30th day of June, 1951, to restore to Local No. 12 full control over its property and affairs, subject only to the provisions of the Constitution of defendant International," and ordered International to "account to Local No. 12 for the funds and property, both real and personal, now and heretofore held by defendant International as trustee for Local No. 12."

In defendant's answer to the present complaint it is affirmatively alleged "that the present action is prematurely brought in that it has been commenced before June 30, 1951 (filed March 7, 1951), up to which time it has been decreed by a court of competent jurisdiction, (the Klippel case) in a decree expressly binding upon all members of Local No. 12, including these plaintiffs, that defendants are entitled to proceed with the establishment of local autonomy under the By-Laws referred to in this action."

The present action came on for hearing before Judge Henry M. Willis on October 3, 1951, upon a stipulation of facts, in which it was stipulated "that the files in the Klippel action shall be placed in evidence herein by reference,"

including findings of fact, conclusions of law and judgment. The only testimony taken was that of defendants' witnesses, William H. Thomas, general counsel for the International, and Philip A. Judd, recording secretary of Local No. 12.

Plaintiffs now appeal from the judgment entered by Judge Willis, holding that "this action is barred by the plea and proof of res judicata founded upon the record and judgment in case No. 568419 (the Klippel case) . . . ; that this action is subject to abatement and dismissal under the plea of estoppel of plaintiffs to prosecute the same by reason of failure to exhaust remedies provided in the Constitution of the International Union; that this action was commenced prematurely and should be dismissed for lack of statement of facts in the complaint herein, sufficient under the limitations of the judgment in case No. 568419 to constitute a cause of action thereby permitted, or to confer jurisdiction in this court to entertain this action."

The controversy herein dates back to the year 1939 when, at the request of various local unions to the respondent International, these unions were consolidated into one large local, from which time Local Union No. 12 existed and functioned as a supervised local, without autonomy, under the direction of International in accordance with article VI, section 3 of the International constitution relating to supervised locals.

The International comprises a membership of some 150,000 persons throughout the United States; Local Union No. 12, having its principal office in Los Angeles, has a membership of approximately 10,000 persons. Since 1950, one Ralph Bronson has been International supervisor of Local No. 12, by appointment from the general president of International, and as such supervisor appointed all officers, etc., of the Local. Members of Local No. 12 have had no right to elect officers or representatives, to designate dues or to control property belonging to the Local, which property, of about $750,000 in value, has been administered by International in trust for the Local.

In December, 1950, and January, 1951, a referendum of the members of Local No. 12, was "fairly and honestly conducted" by secret ballot mailed under supervision of Price, Waterhouse and Company, accountants, to determine whether autonomy was desired. The vote was 2,074 for autonomy, and 2,065 for continued supervision by International.

Prior to said referendum the general president of International had ordered the drafting of tentative by-laws by a

convention called for that purpose, in preparation for the proposed autonomy of Local 12. A set of by-laws was then prepared, published in the official newspaper of Local 12 and distributed to the members. Thereafter, officers were elected by the Local according to the by-law provisions, the principal officers being the same persons who had previously acted under appointment by the International supervisor. As noted by the respondents, appellants made no effort to have these by-laws amended. As to the election of officers, appellants' attorney stated that "There is no challenge as to the mode of election."

The next step in the controversy was the institution by certain members of Local 12 of the Klippel case hereinbefore mentioned, as a representative action, alleging illegality of by-laws, and seeking complete autonomy as to property and affairs of the Local. The judgment therein, which was against appellants' contentions, was held to be res judicata in the present action which, as stated, was dismissed by Judge Willis, resulting in the present appeal.

"The principal questions involved herein," according to appellants' brief are: "1. Is an estoppel, based on the principle of *res judicata,* applicable, where the prior judgment was not based on the merits but was based on the claim the members of a Local Union had not exhausted their remedies under the International Constitution? 2. May members of a Local Union appeal directly to the Courts where the International and the Local Union have violated their own basic Constitution? 3. May By-Laws be approved for a Local Union, which violate the basic Constitution, in method of adoption and also in contents?"

Appellants' contention that the Klippel judgment was not res judicata for the reason that the decision of Judge Nourse in that case was "based wholly on the technical point that the court did not have jurisdiction over a dispute in a labor Union, where the parties have not exhausted all the remedies within the Union," rather than upon the merits of the controversy, is not persuasive. As said in respondents' brief, "The points raised by the appellants in this action were all made, argued and considered by the court in the Klippel case. . . . the court in the Klippel action was asked to set aside the by-laws for the very reasons assigned by the appellants herein. It is clear that the court in that case *could have ruled,* had the evidence justified it, *that autonomy was pro-*

*posed to be restored under illegal by-laws and have enjoined further proceedings thereunder . . . ."*

"A final judgment on the merits between parties who in law are the same operates as a bar to a subsequent action upon the same cause of action, settling not only every issue that was raised, but also every issue that might have been raised in the first action," quoting from *Olwell* v. *Hopkins,* 28 Cal.2d 147, 152 [168 P.2d 972]. In *Murdock* v. *Eddy,* 38 Cal.App.2d 551, 554 [101 P.2d 722], it is held that a judgment is res judicata in a later action even "when the point arises incidentally in relation to a different matter in the same or any other court." Answering another of appellants' contentions, the Murdock opinion further says: "It is also settled that when a party acts in a representative capacity, and as such is lawfully authorized to litigate the questions at issue for those whom he represents, they as well as he are bound by the judgment."

Appellants' brief contains the statement that "It is important to note that none of the plaintiffs in *this* action was a plaintiff in the Klippel case," and from this premise argues that therefore the Klippel judgment could not be conclusive on the present plaintiffs. In this connection appellants cite *Haese* v. *Heitzeg,* 159 Cal. 569 [114 P. 816], wherein the court held that a different group of bondholders could press a different action notwithstanding previous litigation by other bondholders. However, as noted by respondents, this holding is not followed in the later case of *Nelson* v. *Lake Hemet Water Co.,* 212 Cal. 94 [297 P. 914] where, in reference to a representative action, it was held, in the language of the headnote, that "All questions which could have been raised prior to such adjudication are conclusively deemed to have been presented, and all proof that could have been presented is conclusively presumed to have been received, and in a subsequent proceeding by certificate holders who were not parties to the previous proceeding in the Supreme Court, it is not germane to review the events transpiring prior to such adjudication."

In reference to representative actions it is said in 50 Corpus Juris Secundum, page 308 : "Subject to some exceptions, qualifications, and limitations, it is a general rule as to class suits, that is, suits in which one or more persons sue or defend for all and the question is one of a common or general right or the parties are so numerous that it is impracticable to bring them all before the court, that the judgment will be binding on all persons belonging to the class so represented; and the

rule has been held to apply to persons subsequently coming into the class." *Nelson* v. *Lake Hemet Water Co.*, 212 Cal. 94 [297 P. 914], hereinbefore mentioned, among many other cases, is cited in support of the statement.

Appellants' contention that the Klippel judgment is not conclusive in the present action would, if here sanctioned, all but do away with the doctrine of res judicata itself. The record indicates that the judgment in the Klippel case was not a mere technical decision involving jurisdiction only, as appellants contend, but a final determination upon the merits of the case. The issues there involved were to all intents and purposes identical with those presented in the present litigation. To attempt to distinguish between the two cases would require finely spun distinctions without material differences entirely foreign to the spirit of res judicata doctrine. And, as said in respondents' brief, "The most vexatious results would attend any rule which permitted members of an organization to bring successive suits, purportedly on behalf of all members, with none being bound by the results except those named."

Appellants' other contentions are likewise without merit. Considerable space is given to the argument that the local union members may "appeal directly to the Courts (without exhausting remedies within the organization) where the International and Local Unions have violated their own basic Constitution." Another argument is that it would be futile for appellants to seek relief within the organization since the official group in power had declared against appellants' contentions. As stated in the respondents' brief, neither point has been established.

Appellants' specific complaint is that the by-laws were illegal because not adopted at a "regular meeting," as required by article XXII of the International constitution, ballots being mailed to the members by Price, Waterhouse and Company, accountants. Respondents, however, point out that the article above mentioned relates to autonomous local unions, whereas Local No. 12 was a supervised local administered under article VI, section 3 of the Constitution, all its affairs being under International control, and "all rights and powers of the Local Union to conduct its own affairs" being suspended.

A further contention is that the by-laws are illegal because not adopted by "a majority of the members to whom

ballots were sent.'' According to the stipulated facts, 10,306 ballots were mailed out; 2,118 voted ballots were returned, of which 1,714 were in favor of adopting the by-laws, and only 404 ballots were against adoption. As noted by respondents, article XXIII, section 12, page 100 of the International constitution provides for a ''majority vote,'' but does not require a ''majority of the members'' which appellants insist upon. The election, as stated above, resulted in a 4 to 1 majority of those members voting. There was, of course, no way to compel all the members of the union to return the ballots. As commented upon in *In re East Bay, etc. Water Bonds*, 196 Cal. 725 [239 P. 38], the impracticability of appellants' interpretation of the constitutional requirement is obvious. The East Bay case just mentioned held that ''a majority of the electors'' was satisfied by approval of those voting.

Neither in the record nor in the briefs filed is there presented any matter which would justify a reversal of the judgment herein. The trial court was fully justified, both on the law and the facts, in the judgment rendered.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied December 1, 1952, and appellants' petition for a hearing by the Supreme Court was denied January 8, 1953.