[No. C017483. Third Dist. Mar. 23, 1995.]

BERKELEY UNIFIED SCHOOL DISTRICT et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

Breon, O'Donnell, Miller, Brown & Dannis, Emi R. Uyehara and Brant T. Lee for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Floyd D. Shimomura, Assistant Attorney General, Linda A. Cabatic and Shelleyanne W. L. Chang, Deputy Attorneys General, and Gary D. Hori for Defendants and Respondents.

## OPINION

**BLEASE, Acting P. J.**—This is an appeal by numerous school districts (the Districts) from a judgment denying them reimbursement, pursuant to California Constitution, article XIII B, section 6,[1] for the costs of a program, formerly required by regulations of the Department of Education, to alleviate and prevent racial and ethnic segregation of students (the antisegregation regulations). The trial court entered a judgment denying the Districts' petition for mandamus and declaratory relief on the ground it is barred by the statute of limitations. The Districts appeal.

Government Code section 17612[2] establishes the exclusive remedy for violation of article XIII B, section 6, after the Legislature has deleted funds from a local government claims bill to pay for the mandated costs—an action to stay enforcement of the further expenditure of mandated costs. The date the Legislature deletes the funds also is the date upon which a cause of action accrues for reimbursement of state-mandated costs expended prior to that date.

We will conclude that because the Districts did not use the remedy of section 17612 they waived any right to reimbursement for costs incurred thereafter and that the statute of limitations has run as to costs expended prior to that date.

We will affirm the judgment.

---

[1]References to an article are to articles of the California Constitution. Article XIII B, section 6, with exceptions, provides that the state shall provide a subvention of funds to reimburse local governments for costs incurred as a consequence of Legislative mandates enacted after January 1, 1975, and executive orders or regulations initially implementing legislation enacted after such date.

[2]References to a section are to sections of the Government Code unless otherwise indicated.

## Facts and Procedural Background

The background of this controversy is related in *Long Beach Unified School Dist.* v. *State of California* (1990) 225 Cal.App.3d 155 [275 Cal.Rptr. 449] (*Long Beach*).

In 1977 the Department of Education adopted the antisegregation regulations which required that school districts adopt a plan to alleviate and prevent racial and ethnic segregation of students in any district that was segregated or in danger of segregation. (*Long Beach, supra,* 225 Cal.App.3d at p. 165.)

In 1982 Long Beach Unified School District filed a claim with the Board of Control seeking reimbursement under article XIII B, section 6, for state-mandated costs occasioned by the antisegregation regulations. (*Long Beach, supra,* 225 Cal.App.3d at p. 165.)

In 1984 the Board of Control approved the claim, reported the finding to the Legislature, and recommended reimbursement. (*Long Beach, supra,* 225 Cal.App.3d at p. 166.) In March 1985 a local government claims bill was introduced in the Legislature containing an appropriation for the reimbursement of the costs of complying with the mandate. (*Ibid.*) The appropriation was deleted from the bill before its enactment in September of that year. (*Id.* at pp. 166-167.)

In June 1986, Long Beach officials filed a complaint seeking reimbursement of the funds it had expended under the state mandate. (*Long Beach, supra,* 225 Cal.App.3d at p. 167.) The trial court granted the relief, directing that Long Beach be reimbursed from funds appropriated to specified line items in the 1986 and ensuing state budget acts. (*Id.* at p. 180.)

In November 1990 the Court of Appeal affirmed the judgment after modifying it to delete line items not reasonably available for this purpose. (*Long Beach, supra,* 225 Cal.App.3d at pp. 186-187.) The Supreme Court denied the petition for review in February 1991. (*Id.* at p. 187.) The Department of Education repealed the antisegregation regulations, effective July 1991.

On December 24, 1992, the Districts filed the complaint in this action. They seek a writ of mandate compelling the state and various state agencies and officials (the defendants) to reimburse them from specified line item appropriations in various state budget acts for costs they incurred pursuant to the antisegregation regulations in fiscal years 1977-1978 through 1990-1991.

The Districts appeal from the adverse decision of the trial court.

## DISCUSSION

### I

The Districts seek to maintain a cause of action for reimbursement of expenditures made in compliance with the antisegregation regulations of the state Department of Education, which were in effect from 1977 until their repeal in 1991.

In our view, that tenders two issues, one having to do with the expenditure of funds after September 1985, the date upon which the Legislature deleted funds to pay for the desegregation mandate, and the other having to do with the expenditure of funds prior to that date. The September 1985 date is significant for it is the date upon which the Districts first had a right to bring an action for declaratory and injunctive relief pursuant to section 17612, subdivision (c), to prevent the further compelled expenditure of funds. It is also significant as the date upon which there accrued a cause of action for the reimbursement of funds expended prior to the Legislature's action.

The trial court ruled against the Districts on the ground the statute of limitations ran as to all claims for reimbursement. We will affirm that ruling insofar as it is predicated upon the Districts' four-year delay in taking action to seek reimbursement of funds expended prior to September 1985, when that cause of action accrued. As to funds expended after that date, the Districts have waived any remedy of reimbursement of moneys which they need not have expended had they taken action under section 17612, subdivision (c), to declare the mandate unenforceable.

We will address these issues seriatim.

### II

The claims in this case stem from article XIII B, section 6, which provides that "[w]henever the Legislature or any State agency mandates a new program or higher level of service on any local government, the State shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service . . . ."

The Legislature has enacted a statutory scheme for the enforcement of this provision. The scheme was adopted in 1980 and modified in 1984.[3] Since the Districts offer no argument predicated upon any difference between the present scheme and its predecessors, we look to the present enactment contained in the Government Code.

We excerpt the following summary of that scheme from *Kinlaw* v. *State of California* (1991) 54 Cal.3d 326, 331-334 [285 Cal.Rptr. 66, 814 P.2d 1308]: "In part 7 of division 4 of title 2 of the Government Code, 'State-Mandated Costs,' which commences with section 17500, the Legislature created the Commission (§ 17525), to adjudicate disputes over the existence of a state-mandated program (§§ 17551, 17557) and to adopt procedures for submission and adjudication of reimbursement claims (§ 17553). The five-member Commission includes the Controller, the Treasurer, the Director of Finance, the Director of the Office of Planning and Research, and a public member experienced in public finance. (§ 17525.)

"The legislation establishes a test-claim procedure to expeditiously resolve disputes affecting multiple agencies (§ 17554), establishes the method of payment of claims (§§ 17558, 17561), and creates reporting procedures which enable the Legislature to budget adequate funds to meet the expense of state mandates (§§ 17562, 17600, 17612, subd. (a).)

"Pursuant to procedures which the Commission was authorized to establish (§ 17553), local agencies and school districts are to file claims for reimbursement of state-mandated costs with the Commission (§§ 17551, 17560), and reimbursement is to be provided only through this statutory procedure. (§§ 17550, 17552.)

"The first reimbursement claim filed which alleges that a state mandate has been created under a statute or executive order is treated as a 'test claim.' (§ 17521.)[4] A public hearing must be held promptly on any test claim. At the hearing on a test claim or on any other reimbursement claim, evidence may be presented not only by the claimant, but also by the

---

[3]At the time that Long Beach filed its original claim the statutory scheme addressing reimbursement pursuant to article XIII B, section 6, was contained in the Revenue and Taxation Code. (Stats. 1980, ch. 1256.) This scheme was substantially amended in 1982 (Stats. 1982, ch. 735) and was then superseded by enactment in 1984 of the present scheme contained in the Government Code (Stats. 1984, ch. 1459). That scheme has been amended from time to time thereafter.

[4]Under the statutory terminology, a "test claim" is not a reimbursement claim but "the first claim filed . . . alleging that a particular statute or executive order imposes costs mandated by the state." (§ 17521.) A "reimbursement claim" is a claim filed with the Controller for the reimbursement of costs for which an appropriation has been made. (§ 17522.)

Department of Finance and any other department or agency potentially affected by the claim. (§ 17553.) Any interested organization or individual may participate in the hearing. (§ 17555.)

"A local agency filing a test claim need not first expend sums to comply with the alleged state mandate, but may base its claim on estimated costs. (§ 17555.) The Commission must determine both whether a state mandate exists and, if so, the amount to be reimbursed to local agencies and school districts, adopting 'parameters and guidelines' for reimbursement of any claims relating to that statute or executive order. (§ 17557.) Procedures for determining whether local agencies have achieved statutorily authorized cost savings and for offsetting these savings against reimbursements are also provided. (§ 17620 et seq.) Finally, judicial review of the Commission decision is available through petition for writ of mandate filed pursuant to Code of Civil Procedure section 1094.5. (§ 17559.)

"The legislative scheme is not limited to establishing the claims procedure, however. It also contemplates reporting to the Legislature and to departments and agencies of the state which have responsibilities related to funding state mandates, budget planning, and payment. The parameters and guidelines adopted by the Commission must be submitted to the Controller, who is to pay subsequent claims arising out of the mandate. (§ 17558.) Executive orders mandating costs are to be accompanied by an appropriations bill to cover the costs if the costs are not included in the budget bill, and in subsequent years the costs must be included in the budget bill. (§ 17561, subds. (a) & (b).) Regular review of the costs is to be made by the Legislative Analyst, who must report to the Legislature and recommend whether the mandate should be continued. (§ 17562.) The Commission is also required to make semiannual reports to the Legislature of the number of mandates found and the estimated reimbursement cost to the state. (§ 17600.) The Legislature must then adopt a 'local government claims bill.' If that bill does not include funding for a state mandate, an affected local agency or school district may seek a declaration from the superior court for the County of Sacramento that the mandate is unenforceable, and an injunction against enforcement. (§ 17612.)

"Additional procedures, enacted in 1985, create a system of state-mandate apportionments to fund reimbursement. (§ 17615 et seq.)

"It is apparent from the comprehensive nature of this legislative scheme, and from the Legislature's expressed intent, that the exclusive remedy for a claimed violation of section 6 lies in these procedures. The statutes create an

administrative forum for resolution of state mandate claims, and establishes procedures which exist for the express purpose of avoiding multiple proceedings, judicial and administrative, addressing the same claim that a reimbursable state mandate has been created. The statutory scheme also designates the Sacramento County Superior Court as the venue for judicial actions to declare unfunded mandates invalid (§ 17612).

"The legislative intent is clearly stated in section 17500: 'It is the intent of the Legislature in enacting this part to provide for the implementation of Section 6 of Article XIII B of the California Constitution and to consolidate the procedures for reimbursement of statutes specified in the Revenue and Taxation Code with those identified in the Constitution. . . .' And section 17550 states: 'Reimbursement of local agencies and school districts for costs mandated by the state shall be provided pursuant to this chapter.' "

"Finally, section 17552 provides: 'This chapter shall provide *the sole and exclusive procedure* by which a local agency or school district may claim reimbursement for costs mandated by the state as required by Section 6 of Article XIII B of the California Constitution.' [Italics added.]

"In short, the Legislature has created what is clearly intended to be a comprehensive and exclusive procedure by which to implement and enforce section 6." (Fns. omitted.)

### III

In determining when a cause of action accrues for violation of article XIII B, section 6, we first turn to the statutory scheme. Under section 17612[5] an affected entity is given a statutory cause of action for prospective relief from compelled expenditures made under an unfunded state mandate which accrues when the Legislature deletes funding from a local government

---

[5]Section 17612 is as follows.

"(a) Immediately upon receipt of the report submitted by the commission pursuant to Section 17600, a local government claims bill shall be introduced in the Legislature. The local government claims bill, at the time of its introduction, shall provide for an appropriation sufficient to pay the estimated costs of these mandates except where the costs have been or will be paid pursuant to Section 17610.

"(b) The Legislature may amend, modify, or supplement the parameters and guidelines for mandates contained in the local government claims bill. If the Legislature amends, modifies, or supplements the parameters and guidelines, it shall make a declaration in the local government claims bill specifying the basis for the amendment, modification, or supplement.

"(c) If the Legislature deletes from a local government claims bill funding for a mandate, the local agency or school district may file in the Superior Court of the County of Sacramento an action in declaratory relief to declare the mandate unenforceable and enjoin its enforcement."

claims bill after the successful completion of the administrative process. Since the statutory scheme contemplates that the Legislature will appropriate funds in the claims bill to reimburse an affected entity for state-mandated expenditures made prior to its enactment, the date the Legislature deletes such funds is also the point at which a nonstatutory cause of action under *Mandel* v. *Myers* (1981) 29 Cal.3d 531 [174 Cal.Rptr. 841, 629 P.2d 935] (hereafter *Mandel*) logically accrues for the reimbursement of expenditures that are not recoverable under the statutory procedure. (See, e.g., *Carmel Valley Fire Protection Dist.* v. *State of California* (1987) 190 Cal.App.3d 521, 548 [234 Cal.Rptr. 795].) Under *Mandel* a court may order state officials to disregard invalid restrictions upon the expenditure of generally related funds which have been appropriated and are otherwise available for the payment of a financial obligation of the state.

The Districts do not distinguish between the exclusive statutory remedy provided by section 17612 and the *Mandel* remedy. They assume that all expenditures are recoverable under *Mandel*. They make several arguments for the delayed accrual of such a cause of action beyond the date the Legislature denied funding in the local government claims bill. In the alternative, they argue that even if the cause of action does accrue at that date they are entitled to seek reimbursement for all of their expenditures under the mandate which occurred within the limitations period immediately preceding the filing of their complaint.

We address these arguments in inverted order.

## A.

The precise workings of the statutory scheme for reimbursement of state mandated costs is critical to the resolution of the Districts' claims. It provides that a test claim may be brought by an affected entity leading to a local government claims bill, which should contain an appropriation of funds estimated to be required for the reimbursement of the mandated costs expended and to be expended by all of the affected entities.[6] After the successful completion of the administrative procedure leading to the submission of a claims bill to the Legislature, and upon the final action deleting that funding, an affected entity is authorized to file an action in the superior court to declare the mandate unenforceable and to enjoin its enforcement. (§ 17612, subd. (c).)

---

[6]See footnote 5 for the distinction between a test claim (§ 17521) and a reimbursement claim (§ 17522). The claims act imposes statutory limitations upon the manner and timing of a reimbursement claim filed to recover funds appropriated to pay state-mandated costs. (See, e.g., § 17561, subd. (d)(1).) Because in this case no funds were appropriated we are not concerned with a reimbursement claim or with the requirements appurtenant thereto.

In the light of this remedy the Districts had a statutory cause of action to declare the mandate unenforceable and to enjoin its enforcement which arose in September 1985 when the Legislature deleted the funding contained in the local government claims bill.

As related, the Districts argue that the cause of action for costs incurred under an unfunded state mandate is ongoing and that they are entitled to recover such costs if expended within the period of the statute of limitations. The defendants reply that if the affected local government fails to sue within the limitations period it is forever barred from relief.

The Districts imply failure to sue prior to expiration of the limitations period initiated by final action deleting funds from the local government claims bill would not insulate the state from an action to enjoin the further expenditure of unfunded state-mandated costs. (See generally, *Jones* v. *Tracy School Dist.* (1980) 27 Cal.3d 99, 105-106 [165 Cal.Rptr. 100, 611 P.2d 441]; *California Trout, Inc.* v. *State Water Resources Control Bd.* (1989) 207 Cal.App.3d 585, 628-633 [255 Cal.Rptr. 184].) If that were not the case, they suggest, once the limitations period expired the state would gain a perpetual ability to enforce the unfunded state mandate. However, we need not resolve either point because the Districts failed altogether to employ the remedy provided by section 17612 to avoid the costs incurred after 1985 and we deem that a waiver of any claim to reimbursement.

Section 17552 provides that the statutory scheme is the exclusive procedure for claiming reimbursement for costs mandated by the state. "The Legislature has the authority to establish procedures for the implementation of local agency rights under section 6. Unless the exercise of a constitutional right is unduly restricted, the court must limit enforcement to the procedures established by the Legislature. [Citations.]" (*Kinlaw* v. *State of California*, *supra*, 54 Cal.3d at p. 334.) We discern no undue restriction of the constitutional right against *involuntary* imposition of costs under a state mandate in limiting the Districts to the remedy provided them under section 17612 *whenever that remedy would be efficacious.*[7] (But see generally, *Carmel Valley Fire Protection Dist.* v. *State of California supra*, 190 Cal.App.3d at p. 549.)

Once the Legislature deletes funding from a local government claims bill, the local government is not forced to continue incurring unfunded state mandated costs. "Rather, the entity is expressly authorized to bring suit to

---

[7]The prospective remedy provided by section 17612, by its very nature, does not extend retrospectively to funds already expended prior to the date it accrues.

declare such an unfunded mandate *unenforceable*. . . . [¶] The importance of such a remedy stems from the fundamental legislative prerogative to control appropriations. Under the separation of powers doctrine, the Legislature cannot be compelled to appropriate or authorize the disbursement of specific funds. . . ." (*City of Sacramento* v. *State of California* (1990) 50 Cal.3d 51, 63 [266 Cal.Rptr. 139, 785 P.2d 522], original italics, fn. and citations omitted.)

Section 17612 provides, as to future state-mandated expenditures, an efficacious procedure for the implementation of local agency rights under article XIII B, section 6. Accordingly, as to such expenditures, the exercise of the constitutional right to avoid involuntary expenditures is not unduly restricted. There is no statutory remedy of *reimbursement* of state-mandated expenditures that could have been prevented after funding has been deleted from the local government claims bill. The courts accordingly must limit the remedy for future expenditures to the procedures established by the Legislature (see *Kinlaw* v. *State of California supra*, 54 Cal.3d at p. 334) in section 17612.

It follows that any claim to reimbursement of subsequent costs is waived by the failure to seek the relief provided by section 17612. "Generally, 'waiver' denotes the voluntary relinquishment of a known right. But it can also mean the loss of an opportunity or a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to abandon or relinquish the right." (*Platt Pacific, Inc.* v. *Andelson* (1993) 6 Cal.4th 307, 315 [24 Cal.Rptr.2d 597, 862 P.2d 158].)

The Districts could have avoided the imposition of state-mandated costs at any time after their statutory cause of action under section 17612 accrued. Since that cause accrued in September 1985 the Districts waived a nonstatutory *Mandel* remedy for costs incurred thereafter which could have been avoided by timely use of the statutory remedy.

## B.

The Districts offer no claim that the trial court erred in denying them a nonstatutory *Mandel* remedy for costs incurred prior to September 1985 if the court correctly had concluded that their cause of action arose at that time. Nor do we discern any basis for such a claim.

The *Mandel* remedy is judicially created to enforce the constitutional right arising under article XIII B, section 6. That claim of right is subject to the four-year limitations period provided in Code of Civil Procedure section

343. (See *Griffin* v. *Internat. Longshoremen's Union* (1952) 109 Cal.App.2d 823, 826 [241 P.2d 552]; cf., e.g., *Gibson* v. *United States* (9th Cir. 1986) 781 F.2d 1334, 1342.) More than four years had elapsed from September 1985 and the date on which the Districts filed this action.

## IV

That leaves the Districts' remaining claims: the accrual of their cause of action was delayed beyond September 1985, the date established by section 17612; the state is estopped to rely upon any statute of limitations; and the limitations period should be deemed equitably tolled. The Districts offer arguments in support of each of these claims; none is persuasive.

## A.

■ The Districts argue that the cause of action for reimbursement did not accrue in September 1985 because they were required to await the finality of the judgment in *Long Beach* before they could seek a judicial remedy. They reason that once a test claim is filed by another local government entity subject to the same mandate, they must await the resolution of the claim before they can pursue their own claim for reimbursement. The implicit theory is that some affected party must exhaust the administrative remedy provided by statute and that in light of the limitation of the "test claim" procedure to the first claim filed all other affected parties must await the outcome of the test claim. (See, e.g., 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 503, pp. 529-530.)

The critical question is, assuming this theory is correct—how long must they wait?

The Districts suggest their cause of action does not accrue until the statute of limitations has run on the state's right to judicial review of the administrative determination that there is a state mandate or until the final judgment in any litigation brought by the test claimant or the state. This view is insupportable.

The Districts rely upon the holding in *Long Beach* that the state is not subject to issue preclusion regarding an administrative determination that there is a state mandate, under the doctrine of administrative collateral estoppel, until the expiration of the three-year period for judicial review of the decision of the administrative agency. (225 Cal.App.3d at pp. 168-170.) They view *Long Beach* as holding that the "administrative decision" regarding the state mandate was "not final" because it was not yet free from direct

attack. They suggest that since the outcome of the "test claim" was not final they were precluded from acting.

The argument founders because issue preclusion has no bearing on the question whether the Districts had a cause of action which accrued, i.e., upon which they could bring suit. (see, e.g., 3 Witkin, Cal. Procedure, *op. cit. supra*, § 351, pp. 380-381.) Under the doctrine of exhaustion of administrative remedies: " ' "judicial interference is withheld until the *administrative* process has run its course." ' " (*Farmers Ins. Exchange* v. *Superior Court* (1992) 2 Cal.4th 377, 390 [6 Cal.Rptr.2d 487, 826 P.2d 730], quoting from *United States* v. *Western Pac. R. Co.* (1956) 352 U.S. 59, 63-64 [1 L.Ed.2d 126, 132, 77 S.Ct. 161], italics added.) That occurred in this case on May 7, 1984, when, in the *Long Beach* case, the Board of Control approved the claim that the desegregation regulations imposed a state mandate and sought guidelines for reimbursement from the Legislature. (225 Cal.app.3d at pp. 168-169.)

As we have explained, section 17612 implies that judicial interference must be withheld until the narrowly prescribed legislative process has also run its course. It does not imply that the judicial forum is unavailable thereafter. Section 17612 is expressly to the contrary.

The Districts cite to *Hoover* v. *Galbraith* (1972) 7 Cal.3d 519 [102 Cal.Rptr. 733, 498 P.2d 981], which held that pending proceedings in a related action, which prevented an effective suit, tolled the running of the statute of limitations. (Also see, e.g., 3 Witkin, Cal. Procedure, *op. cit. supra*, §§ 502-505, pp. 528-531.) In *Hoover* the plaintiff tendered a claim as a judgment creditor of a defunct corporation against the former directors who failed to provide for payment of the debt. (7 Cal.3d at pp. 521-523.) A statute provided that the period of limitations began when the liability of the corporation and its directors was established, not when the cause of action on the debt accrues. The Supreme Court held that the statute of limitations was tolled during the pendency of the appeal from the judgment in the plaintiff's favor in the predicate action against the corporation to establish the debt: "He did all that he could to seasonably assert his rights against [the directors] but was prevented by statute from proceeding sooner." (*Id.* at p. 527.)

The Districts liken this case to *Hoover* on the view that "unless the limitations period is tolled, the state will escape responsibility for its failure to reimburse school districts by simply appealing the test claim determination of the right to reimbursement of Title 5 costs until the period has

lapsed." The analogy fails. Unlike *Hoover*, the Districts fail to identify any statutory provision barring them from bringing a cause of action under section 17612 as soon as the Legislature deleted funding for the alleged mandate from the local government claims bill.

The Districts also rely on *Phillips* v. *County of Fresno* (1990) 225 Cal.App.3d 1240 [277 Cal.Rptr. 531]. A deputy sheriff was denied a disability pension by the county retirement board on the ground he was capable of continuing to work. The sheriff refused to reinstate him believing that he was incapable of working. He sued for reinstatement under a statute providing that the employer could petition for judicial review of the retirement board's decision and "[i]f such petition is not filed or the court enters judgment denying the writ, . . . the employer shall reinstate the member to his employment effective as of the day following the effective date of the dismissal." (*Id.* at p. 1244, fn. 2.) The Court of Appeal held that the employer had no duty under this statute to reinstate the employee until the expiration of the 30-day period in which it had a right to seek judicial review of the finding of the retirement board. (*Id.* at p. 1252.) Accordingly, the cause of action under the statute did not accrue until that time had elapsed.

The Districts suggest that their cause of action against the state did not accrue until the finality of the judgment resolving the state's challenge to the finding of the Board of Control in *Long Beach* that the desegregation regulations imposed a state mandate. Once again, the Districts fail to identify an analogous statutory text which provides that their cause of action does not accrue until the lapse of the period of time for challenge of the administrative decision. There is no language in the statutes governing the reimbursement of state-mandated costs which suggests that the duty of the state to fund its mandates does not arise until the lapse of the statutory period for challenging the administrative determination.

The statute of limitations for review of an administrative decision pursuant to Code of Civil Procedure section 1094.5 is three years. (Code Civ. Proc., § 338; see, e.g., *Long Beach, supra,* 225 Cal.App.3d at p. 169.) As noted, section 17612, subdivision (c), expressly provides that an affected entity may file an action to declare a mandate unenforceable and enjoin its enforcement when "the Legislature deletes from a local government claims bill funding for a mandate . . . ." (See generally, *Los Angeles Unified School Dist.* v. *State of California* (1988) 199 Cal.App.3d 686, 692 [245 Cal.Rptr. 140].) Otherwise, the state could force continued expenditures under an unfunded mandate, contrary to article XIII B, section 6, for three years by the simple expedient of failing to challenge the administrative

determination that a mandate existed. Justice delayed in this fashion might well be permanently denied, since recovery would depend upon the happenstance of sufficient unexhausted appropriations of funds reasonably available to satisfy the judgment. A local government which promptly brought an action under section 17612 would vehemently, and we think justly, complain that the Districts' interpretation of the statutory scheme would defeat the purposes of article XIII B, section 6.

## B.

■ The Districts argue that the state is estopped as a matter of law to rely upon a statute of limitations. They rely on the doctrine that an estoppel is recognized where the defendant's conduct is relied upon by the plaintiff who is induced thereby to delay in filing an action. (See, e.g., 3 Witkin, Cal. Procedure, *op. cit. supra*, Actions, § 523, p. 550.) They suggest that the state, in adopting the statutory scheme employing the test claim procedure, represented that it would be governed by the determination of the mandate issue in *Long Beach*. They suggest that the state defendants are disingenuous because they argued against administrative collateral estoppel in *Long Beach* and now assert that the test claim process was complete in 1985.

As we have explained, there is no inconsistency between an absence of administrative collateral estoppel and completion of the administrative test claim process. We discern no implied representation on the part of the state of the character asserted by the Districts in the statutory scheme concerning reimbursement of state-mandated costs, nor in compliance with that scheme by state officials.

Finally, estoppel is ordinarily a question of fact, e.g., with regard to the question of reliance. The Districts identify no evidence in the record which compels the conclusion that they relied upon the conduct of the state in delaying the filing of this action.

## C.

■ The Districts argue that the doctrine of equitable tolling applies so as to extend the limitations period. They cite cases (e.g., *Addison* v. *State of California* (1978) 21 Cal.3d 313, 318 [146 Cal.Rptr. 224, 578 P.2d 941]; *Collier* v. *City of Pasadena* (1983) 142 Cal.App.3d 917, 923 [191 Cal.Rptr. 681]) which apply the doctrine that ". . . if the defendant is not prejudiced thereby, the running of the limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.' [Citations]." *Elkins* v. *Derby* (1974) 12 Cal.3d 410, 414 [115 Cal.Rptr. 641, 525 P.2d 81].)

The doctrine has no application here. The Districts were not disadvantaged by the passage of time attributable to their good faith error in having earlier pursued a different legal remedy. The Districts never pursued an earlier legal remedy.

Chafing at the limits of existing case law, the Districts invite us simply to transcend them. They suggest we should reward them for not "clog[ging] the courts with numerous individual actions" before the resolution of *Long Beach* and treat them as if they *had* participated in that litigation under the vague rubric of "virtual representation." The "argument" seems to be that since *Long Beach* might have been suitable for maintenance as a class action, we should treat it as if it had been such.[8] This is not a legal argument, it is a request for an ipse dixit.

## DISPOSITION

The judgment is affirmed.

Nicholson, J., and Raye, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 29, 1995. Mosk, J., was of the opinion that the petition should be granted.

---

[8]The Districts also cite *Nelson* v. *Lake Hemet Water Co.* (1931) 212 Cal. 94 [297 P. 914], contending that it "stands for the principle that a judicial determination of a common issue regarding an administrative decision is binding for all like parties before the administrative agency." *Nelson* is inapposite. In *Nelson* a corporation contracted to supply water at low rates to persons to whom it had sold land. Attempting to raise the rates it obtained a ruling that it was a public utility from the Railroad Commission. However, in an earlier case some of the landowners successfully petitioned for judicial review and obtained a ruling from the Supreme Court that the company was not a public utility. Then in *Nelson*, the water company took the position that as to those who had not sought judicial review the administrative order determining that it was public utility was still valid. The Supreme Court decided to the contrary: "The decree of the Railroad Commission of 1916 must, therefore, be held to have been overthrown entirely by the judgment in the Allen case, and in so doing the appellant was established as and declared to be a private corporation as to the services being rendered the [landowners who had not originally sought judicial review.]" (*Id.* at p. 98.) *Nelson* only stands for the proposition that certain administrative orders, like certain judgments, are nonseverable and not subject to partial review. (See, e.g., 9 Witkin, Cal. Procedure, *supra*, Appeal, § 155, pp. 163-164.)